BRIAN D. LYNCH
United States Bankruptcy Judge
1717 Pacific Ave, Suite 2155
Tacoma, WA 98402

# UNITED STATES BANKRUPTCY COURT
# WESTERN DISTRICT OF WASHINGTON AT TACOMA

| | |
|---|---|
| In re: | Case No. 09-44442-BDL |
| ADRIANA ALEXIS BENNETT, | |
| Debtor. | |
| JAMES F. BENNETT, | Adversary No. 09-04160-BDL |
| Plaintiff, | |
| v. | **MEMORANDUM** |
| ADRIANA ALEXIS BENNETT, | |
| Defendant. | |

## **Background**

James F. Bennett, a pro se creditor and the former spouse of Debtor-Defendant Adriana Bennett, seeks to dismiss Debtor's case under 11 U.S.C. § 707(b)(3). Mr. Bennett had originally filed an adversary against Debtor on September 25, 2009, seeking dismissal of Ms. Bennett's bankruptcy under 11 U.S.C. § 727(a)(4) and 707(b)(2). During the course of the litigation, Mr. Bennett's claims were amended to include an allegation that he was also entitled to dismiss this case under 11 U.S.C. § 707(b)(3), based on the original allegations in his complaint. [Adversary Docket No. 49].

The Court, on a Motion to Dismiss by Plaintiff, dismissed the claim under § 707(b)(2) on October 26, 2010 because even if Ms. Bennett amended her B22A statement to show child

MEMORANDUM DECISION - 1

support income which had been left off, Mr. Bennett did not establish that a presumption of abuse arose. The Court, at a second hearing on November 16, 2010 on the parties' summary judgment motions,[1] dismissed Mr. Bennett's claims under 727(a)(4) on the grounds that the failure of Debtor to show her child support income on the B22A statement was not a false oath, but was rather an inadvertent mistake based upon the advice of her then-counsel, as evidenced by the fact that Debtor did list that support income on her Schedule I.

The Court did conclude that there were factual questions whether under § 707(b)(3), considering the totality of circumstances, granting Ms. Bennett relief under Chapter 7 of the Bankruptcy Code would be an abuse, and denied the summary judgment motions as to that claim. The case was set for an evidentiary hearing that took place on January 5, 2011. The following are the Court's findings of fact and conclusions of law under Fed. R. Bankr. P. 7052 and Fed. R. Civ. P. 52.

### Jurisdiction

The Court has jurisdiction over this matter under 28 U.S.C. §§ 1334(a) and (b) and 157 (a) and (b).This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (J) and (O)

### Findings of Fact

Adriana Bennett is a medical technician with the Portland office of the Department of Veteran Affairs. In June of 2009, when she filed her Chapter 7 case, she had recently moved to a rental house with her 69 year old mother and her 13 year old daughter from a previous marriage from the residence she had shared with James Bennett. The Bennetts had been married for five years and were going through a divorce in Clark County Superior Court. Ms.

---

[1] Portions of Defendant's motion to dismiss [Adversary Docket No. 46] were converted by the Court to a motion for summary judgment under Fed.R. Bankr. P. 7012 and Fed. R. Civ. P. 12(d) because they required consideration of matters outside the pleadings.

MEMORANDUM DECISION - 2

Bennett was advised in the divorce case, after mediation, that she consult a bankruptcy attorney.

Ms. Bennett was incurring attorneys' fees in connection with the divorce. Further, she became aware that the home she was renting was in foreclosure, and she was afraid her family would be homeless after August 2009. As shown in her Schedules I and J, Ms. Bennett had a monthly income of $3,987 after payroll deductions, which included $367 per month in child support from the father of her 13 year old; and monthly expenses of $3,941 for her and her daughter, leaving net monthly income of $46, which did not include payments on her student loan. Ms. Bennett's schedules listed a mortgage obligation of $297,000 (for the home she formerly shared with Mr. Bennett), an obligation of $5,494 to her credit union for her 2003 Honda, priority tax debt to the IRS in the amount of $3,794, and unsecured claims of $109,618, including her own $51,844 student loan obligation, which has since increased to $54,395.00 and which is presumptively non-dischargeable under 11 U.S.C. §523(a)(8).

Mr. Bennett makes the following points in support of the § 707(b)(3) motion:

1. The Schedule I included a $240 per month 401(k) contribution, and a 401(k) loan repayment of $94 per month.

2. Both Ms. Bennett's IRS obligation and car payment have been paid in full since the filing in June 2009 so, while listed on Schedule J, they should no longer be considered in analyzing her disposable income.

3. Schedule J includes a $408 payment for private school tuition for the debtor's 13 year old.

4. Debtor's financial circumstances have changed since filing as she moved into a home with a boyfriend in August 2009, and now shares living expenses.

MEMORANDUM DECISION - 3

5. Through payments by Mr. Bennett and Ms. Bennett post-petition, the parties' community unsecured debts, exclusive of their student loan obligations, have been reduced from approximately $30,000 to approximately $14,000.

6. Ms. Bennett's gross income from her job in 2010 was approximately $63,323, extrapolated from her income through October 2010, or an average of $5,277 per month gross employment income, and an average of $3,069 per month in net employment income after payroll deductions.

7. Per Mr. Bennett's calculation, Ms. Bennett's net income plus child support is $3,436; her expenses, as stated in her November 8 Declaration ( which include her share of the household expenses, payments to her mother for child care, and the student loan payment) (Exhibit P-3), minus the private school tuition which he disputes are $2,812, and therefore Ms. Bennett has a net disposable income of $624, from which she could pay all of her unsecured debts, other than the student loan, over the life of a chapter 13.

In response, Ms. Bennett points out that the 401(k) contribution is only equal to the match which the government pays to employees; she will have to pay the student loan debt a *minimum* of $315 per month; she has been paying private school tuition (currently $408 per month) for her daughter since she was five (5) years old and the child support she receives pays for the greatest portion of the tuition; in September 2010 she gave birth to another daughter with the man she lives with; she pays her mother $400 per month to take care of her new baby and to drive her older daughter to and from school (the father of the baby also pays Debtor's mother $200 per month); and she does not and has not received any support from James Bennett. She also points out that full-time day care for her infant daughter would cost

MEMORANDUM DECISION - 4

significantly more than what she is paying her mother, and that the $2,097 in expenses does not include any additional expense for her infant daughter who was born in the month prior to preparation of the Declaration (Exhibit P-3, page 2).

## **Conclusions of Law**

In determining whether the filing of a chapter 7 petition constitutes abuse under 11 U.S.C. § 707(b)(3)(B),[2] courts examine the totality of the circumstances, including

> 1) Whether the debtor has a likelihood of sufficient future income to fund a Chapter 11, 12, or 13 plan which would pay a substantial portion of the unsecured claims;
>
> 2) Whether the debtor's petition was filed as a consequence of illness, disability, unemployment, or some other calamity;
>
> 3) Whether the schedules suggest the debtor obtained cash advancements and consumer goods on credit exceeding his or her ability to repay them;
>
> 4) Whether the debtor's proposed family budget is excessive or extravagant;
>
> 5) Whether the debtor's statement of income and expenses is misrepresentative of the debtor's financial condition; and
>
> 6) Whether the debtor has engaged in eve-of-bankruptcy purchases.

Price v. United States Trustee, 353 F.3d 1135, 1139-40 (9th Cir. 2004) (citing 3 *Norton Bankruptcy Law and Practice 2d* § 67:5 at 67-10); see also In re Hickman, Case No. 07-41199, 2008 Bankr. LEXIS 3253 at *14 (Bankr. W.D. Wash. June 27, 2008) ("707(b)(3) is best understood as a codification of pre-BAPCPA case law, and as such, pre-BAPCPA case law is still applicable").

---

[2] 11 U.S.C. §707(b)(3)(A) provides for dismissal if the petition was filed in bad faith. Plaintiff never made a bad faith argument, but the Court also concludes there is no basis for a finding of bad faith on the facts presented, for the reasons set forth *infra*.

MEMORANDUM DECISION - 5

Reviewing factors 2) through 6) first, while Ms. Bennett's predicament at the time she filed this case is not specifically listed, a recently separated single woman with a 13 year old daughter and a 69 year old mother in the midst of a stressful divorce with over $400,000 in debt qualifies as the kind of unforeseen situation for which a petition in bankruptcy is a natural consequence.

There is no allegation that she obtained cash advancements or consumer goods on credit prior to the filing.

Her budget is not only not excessive or extravagant, it is austere. The child care expenses which she pays her mother to assist her with her two daughters, a total of $600, $200 of which is paid by the father of the youngest daughter, are significantly below what the cost would be for day care elsewhere. She listed no expenses for her infant daughter in her Declaration (Exhibit P-3), which will increase with a certainty. She has no secured debt, and her housing expense is below IRS standards.

The only expenses which James Bennett takes issue with are the private school tuition paid for Ms. Bennett's daughter and the 401(k) contribution. While private school tuition in some cases may be an inappropriate expense, the Court notes that the child has been in attendance at this school for four years, and in private school for, nine years. The tuition expense is not high. Given the emotional roller coaster the child has been through with multiple moves and changes in the household, and given that most of that expense is covered by the child support paid to Debtor by the father of that child, this expense is not an extravagance. The 401(k) contribution is not only reasonable, it is fully allowed by law when considering whether the filing of the case is an abuse.

MEMORANDUM DECISION - 6

The statement of income and expenses filed by Ms. Bennett at the time of the petition is not misrepresentative of her financial condition at the time of filing. If anything, by failing to note the student loan expense and the fact that the Debtor's mother was dependent on her, Debtor understated her financial plight. Moreover, her scheduled income included a substantial amount of overtime, which demonstrates an effort to maximize her income along with minimizing her expenses.

Lastly, there is no allegation that the debtor has engaged in eve-of-bankruptcy purchases. And in fact, Debtor has, through paying off her car debt and selling a horse which the family previously owned, shown a good faith effort to live frugally.

Returning to the first criterion, a debtor's ability to fund a chapter 13 plan which would pay a substantial portion of the unsecured claims has been characterized as the primary factor defining abuse. <u>Zolg v. Kelly</u>, 841 F.2d 908, 912-13 (9th Cir. 1988). The calculation of a hypothetical chapter 13 plan involves first a calculation of the debtor's projected disposable income in a chapter 13, and then a determination of whether that projected disposable income could pay a "substantial portion" of the unsecured debts.

In calculating projected disposable income in a chapter 13, the Court first considers the current monthly income and any changes to that income going forward. The debtor is allowed to deduct from her income any retirement contributions and any payments on 401(k) loans. With the allowed deductions, her net monthly income with child support, is $3,436. She lists $2,097 as her share of the living expenses of the household. In addition, she has child care expenses of $400, a minimum student loan expense of $315 per month, and her daughter's tuition expense of $408 per month, which this court believes is a monthly expense required for the health and welfare of Debtor's daughter. That leaves at best a net disposable income of

MEMORANDUM DECISION - 7

$216 per month. In addition, filing a chapter 13 case will add more in the way of administrative expenses, both attorneys' fees (the "no-look" attorney fee for debtor counsel in this jurisdiction is $3,250 and if there is litigation regarding the debtor's disposable income the fees will in all likelihood exceed the no-look fee), and the Chapter 13 trustee's percentage fee (which could range up to 10% of monthly plan payments). This does not reflect what are undoubtedly going to be additional expenses for her baby going forward and likely greater day care expenses as the debtor's 70+ year old mother is less able to undertake full time care. With the various Chapter 13 deductions, this debtor will have at most $100 per month available to pay unsecured creditors during the life of her plan, and in all likelihood much less. This is not a substantial portion of her debt that might support a finding of abuse under 707(b)(3)(B). And, as the moving party has paid down the parties' community debts, he no doubt can be expected to seek reimbursement for some or all of said payments if this case is converted to chapter 13.

Lastly, it is apparent to this Court from the pleadings, the protracted litigation brought by Mr. Bennett pro se and the dealings between the parties at the hearing, that there is minimal, if not negligible benefit of having this debtor continue in a chapter 13 case with the prospect of further protracted litigation involving Mr. Bennett. . Ms. Bennett is not escaping her major debt, the student loan. And she is and will remain the primary supporter of two children and an elderly mother. In a case with similar facts, In re Ramlow, 417 B.R. 479, 484 (Bankr. N.D. Ohio 2009), the court concluded:

> Upon taking all these mitigating circumstances into consideration, the Court is left with belief that the Debtor, in filing her Chapter 7 petition, was not, as abominated by the 6th Circuit in In re Krohn, seeking to take advantage of her creditors. Instead, the overall picture presented to the Court of the Debtor is that of an honest person, trying to responsibly handle her finances, but because of unexpected events came to find herself in an untenable financial predicament.

MEMORANDUM DECISION - 8

That analysis applies in this case. Weighing all of the criteria to be considered in determining whether this filing constituted an abuse, and considering how little funds are likely to be paid out in a hypothetical chapter 13, the Court denies the motion to dismiss under 11 U.S.C. 707(b)(3) and directs that an order of discharge be entered in this case.

An order in accord with these findings and conclusions will be entered separately.

*[Signature]*

Brian D. Lynch
United States Bankruptcy Judge
(Dates as of Entered on Docket date above)

Hon. Brian D. Lynch
United States Bankruptcy Judge

MEMORANDUM DECISION - 9